IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| SHEILA M., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 25-cv-01106-TMP |
| | ) |
| FRANK J. BISIGNANO, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

---

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

---

On April 27, 2025, Sheila M. ("Plaintiff") filed a Complaint seeking judicial review of a Social Security decision.[1] (ECF No. 1.) Plaintiff seeks to appeal the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits and Title XVI supplemental social security income.[2] (ECF No. 15-1 at PageID

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on June 11, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11.)

[2]Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1993.) For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

On February 25, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434, and a proactive Title XVI application for supplemental security income (ECF No. 8-2 at PageID 30.) The application, which alleged an onset date of August 1, 2015, was denied initially and upon reconsideration. (Id.) Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") via telephone on November 20, 2023. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Plaintiff was not disabled. (Id. at PageID 31.) At the first step, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2016, and had not engaged in substantial gainful activity since the alleged onset date August 1, 2015, through her date last insured. (Id. at PageID 32.) At the second step, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus and obesity. (Id.)

At the third step, the ALJ concluded that Plaintiff's impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20

- 2 -

C.F.R. Part 404, Subpart P, Appendix 1. (Id. at PageID 34.) Accordingly, the ALJ then had to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> through the date last insured, [Plaintiff] had the following residual functional capacity: [Plaintiff] could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday. The claimant could occasionally stoop, kneel, crouch, crawl, and climb.

(Id. at PageID 34.) The ALJ notes that Plaintiff's capacity to perform "all or substantially all of the requirements of [light work] was impeded by additional limitations." (Id at PageID 39.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed Plaintiff's testimony and the medical evidence in the record. She summarized Plaintiff's testimony as follows:

> [Plaintiff] alleges they have been disabled since August 1, 2015 due to symptoms and limitations from MS, diabetes, a thyroid disorder, a nerve condition, optic neuritis, astigmatism, depression, and anxiety. More specifically, [Plaintiff] alleges they have been suffering from extreme fatigue and they are always tired. Moreover, [Plaintiff] alleges they have been

- 3 -

suffering from chronic pain, particularly involving their neck, back, shoulders, hands, hips, legs, and feet. [Plaintiff] further alleges they suffer from a burning, tingling, numbness, and/or pins and needles-like sensation in their hands and feet as well. [Plaintiff] alleges their legs have given out on them too. Furthermore, [Plaintiff] alleges they have been suffering from swelling in their hands, legs, ankles, and feet due to a fluid pill they have been taking and the swelling is exacerbated by exposure to heat. [Plaintiff] also alleges they have to frequently use the restroom because of this fluid pill as well. In addition, [Plaintiff] further alleges they have been experiencing blurred vision with floaters. Lastly, [Plaintiff] alleges they stutter, they are socially isolated, their mind wanders, and they experience brain fog, irritability, crying spells, and panic attacks as well. As a result, [Plaintiff] alleges they have had significant difficulty standing, walking, lifting, bending, balancing, kneeling, squatting, climbing stairs, reaching, using their hands, seeing, talking (getting words out), understanding, remembering, concentrating, handling stress, being around other people, and sleeping. Most notably, [Plaintiff] testified at the hearing that, prior to the date last insured, they could only lift about ten pounds, they could only stand for about fifteen to twenty minutes at one time, they could only walk for about thirty minutes at one time, they had great difficulty lifting their left leg when climbing stairs, and they fell frequently.

(ECF No. 8-2 at PageID 35 (internal citations omitted).) The ALJ

stated that

[a]fter careful consideration of the evidence, [she] finds that [Plaintiff's] medically determinable impairments could reasonably have been expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence found in the record for the reasons explained in this decision.

(Id.)

- 4 -

On January 31, 2024, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Plaintiff's request for review. (Id. at PageID 14.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Plaintiff argues that the ALJ incorrectly evaluated her RFC and did not sufficiently account for the time Plaintiff would spend off-task due to fatigue and pain and frequent absences due to medical appointments, and failed to consider the effect of obesity as a severe impairment on Plaintiff's non-severe impairments. (ECF No. 15-1 at PageID 1996.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v.

- 5 -

Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)); Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs., 893 F.2d 106, 108 (6th Cir. 1989)); Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499

- 6 -

F.3d 506, 509 (6th Cir. 2007)); Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

## B.    The Five-Step Analysis

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove they have a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525,

404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, the ALJ must proceed to the fifth step, where they determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

## C.   Consideration of Time Spent Off-Task

Plaintiff argues that the ALJ did not discuss how she concluded there were jobs Plaintiff could perform with frequent medical absences. Plaintiff claims that the frequency of medical appointments alone represents time that she would need to be absent from work and that when the ALJ posed questions to the vocational expert ("VE") concerning time off-task and frequent absences, the VE responded that there would be no jobs available.

- 9 -

(ECF No. 15-1 at PageID 1999.) In her decision, the ALJ notes that the VE concluded Plaintiff has no past relevant work, so considering her age, education, work experience, and RFC and given all the limiting factors, Plaintiff would be able to perform the requirements of occupations such as "mail sorter[,]" "photocopying machine clerk[,]" and "office clerk." (ECF No. 8-2 at PageID 39.)

The testimony transcript reflects that during the VE's cross-examination, Plaintiff's counsel posed hypothetical scenarios where an individual would need to be "off task 20 percent in her day for fatigue and pain," and the VE agreed it would preclude the jobs she listed because "20 percent is 96 minutes a day, and that exceeds the two 15-minute breaks and the 30-minute lunch." (Id. at PageID 83.) The VE also testified that "[a]nything above one absence a month is going to be prohibitive if this is occurring every month." (Id. at PageID 84.) Plaintiff's counsel then asked the VE for her opinion if an individual did not have regular monthly absences, but rather an inconsistent pattern of one absence one month, no absences the next, and five absences the third month. (Id.) The VE testified that she could not determine exactly how many days would be too many because "policies are all different" and that "[i]t really depends on the employer." (Id.)

As part of her argument, Plaintiff included a calendar of medical appointments in her exhibits, illustrating that she had sixteen appointments in eleven months between August 2015 to June

- 10 -

2016. (ECF Nos. 15-1 at PageID 1996; 8-6 at PageID 236-46.) In September 2015, Plaintiff had five medical appointments, but for four months within this period, Plaintiff only had one medical visit and Plaintiff had no medical visits at all for three of the months in 2016. (ECF No. 8-6 at PageID 236-46.) In her decision, the ALJ indicated that Plaintiff "primarily allege disability due to symptoms and limitations arising from MS" and that

> treatment notes found in the record prior to the date last insured contain very little information regarding the nature and extent of [Plaintiff's] reported symptoms. Furthermore, aside[] from the apparent use of medication, the record also does not appear to show the claimant receiving any other significant or ongoing medical treatment, such as hospitalization, visits to the emergency department, regular follow up visits with a neurologist, or the use of orthotics or a handheld assistive device, prior to the date last insured.

(Id. at PageID 35.) She also noted that

> the record shows more recent physical examinations were generally unremarkable, including an unimpaired gait, and any symptoms of MS they may currently be experiencing would appear to be under good control as well ("Her MS she feels is under good control", "Patient clinically [has] done well for last few years", "No deficits noted", "Speech is fluent without dysarthria or aphasia", "Motor: strength 5/5 throughout, normal tone, no abnormal movements, no tremors, no rigidity, or bradykinesia", "Muscle strength is full in both upper and lower extremities", "Sensory: Sensation intact to all modalities in BUE and BLE", "Reflexes: Biceps, brachioradialis, patellar, and ankle reflexes 2+ throughout and symmetric, negative Hoffmans", "Reflexes are symmetric", "Coordination: FNF smooth and accurate bilaterally", "Swinging flashlight test is negative", "Gait: steady without assistance", "Gait is without ataxia", etc.)

(Id. at PageID 37 (internal citations omitted).) With regard to Plaintiff's ability to work, the ALJ concluded that Plaintiff "has a limited work history and they had discontinued working well before their alleged onset date, which strongly suggests they were not working at that time due to reasons unrelated to disability."

(Id.) The ALJ further posits that

> the record shows [Plaintiff] engaging in a variety of activities after the date last insured that certainly do not reflect an individual who was suffering from the symptoms and limitations to the extent that they allege prior to the date last insured, particularly since they testified that their symptoms have worsened since then ("Pt. states she was in the tanning bed on Saturday", "Under continuous time pressure due to the number of people who she care for: mother with alzheimer's, has custody of 2 small grandchildren", "[s]he reports she adopted 2 of her grandchildren ages 9 and 5 and she homeschools them daily … mother, step-father and mother-in-law all suffer from dementia and she assists with some of their needs", etc.)

(Id. (internal citations omitted).)

It is not the duty of the court to resolve conflicts in the evidence or decide questions of credibility. Plaintiff's argument assumes that the number of medical appointments equates to work-preclusive absences. However, although Plaintiff identified sixteen medical appointments over an eleven-month period, the appointments were not evenly distributed, several months included only a single visit, and three months included no medical visits at all. Moreover, the VE testified that while absences exceeding one day per month on a consistent basis would generally be work-

- 12 -

preclusive, the effect of irregular absences would depend on the employer. The ALJ also found that Plaintiff's treatment before the date last insured was relatively limited and that Plaintiff's medical evidence, daily activities, and work history were inconsistent with the degree of limitation alleged. Thus, there is substantial evidence supporting the ALJ's determination.

## D.    Consideration of the Effects of Obesity

Plaintiff also argues that the ALJ did not correctly apply relevant Social Security regulations when determining her RFC, and that the resulting determination is not supported by substantial evidence. Although the ALJ notes that Plaintiff has severe diabetes and severe obesity, Plaintiff claims the ALJ did not consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and did not sufficiently assess the RFC to "account for how Plaintiff's obesity would exacerbate another impairment[,]" as required by Social Security Ruling 19-2p, 2019 SSR LEXIS 2. (ECF No. 15-1 at PageID 1999.)

Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). They constitute "public precedential decisions" relating to the Administration's interpretations of law and regulations and dictate how certain laws and regulations are applied. Social Security Ruling 19-2p, 2019 SSR LEXIS 2, at *1 (May 20, 2019).

- 13 -

Both Plaintiff and the government agree that SSR 19-2p, which articulates how the Administration establishes "that a person has a medically determinable impairment of obesity and how [they] evaluate obesity in disability claims under Titles II and XVI of the Social Security Act," applies. Id. SSR 19-2p requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." 2019 SSR LEXIS 2 at *12. The Ruling notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." Id.

Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the "burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." Lumpkin v. Comm'r of Soc. Sec., No. 1:20-CV-01849-DAP, 2021 WL 5828692, at *2 (N.D. Ohio Oct. 6, 2021). Plaintiff argues that "there is no analysis as to how [the ALJ] applied the severe finding of obesity in the RFC" and thus fails to adequately explain how she considered Plaintiff's obesity. (ECF No. 15-1 at PageID 1998.)

In the analysis of Plaintiff's medical history to determine her RFC, the ALJ followed the commands of SSR 19-2p. She writes:

- 14 -

> In considering [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's] pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [her] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(ECF No. 8-2 at PageID 34-35.) Synthesizing the medical evidence, Plaintiff's own allegations of symptoms, and the observations of her healthcare providers, the ALJ found that

> [Plaintiff's] physical impairments limited her to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. Additionally, [Plaintiff's] obesity in combination with the other medically determinable physical impairments limited them to occasionally stooping, kneeling, crouching, crawling and climbing.

(Id. at PageID 37 (internal citations omitted).)

This is a clear recognition of Plaintiff's obesity and its limiting factors, considered alongside "the objective medical evidence and treatment found in the record." (Id.) SSR 19-2p merely requires that obesity be considered, and that the conclusion reached regarding its effects be explained. Here, the ALJ

- 15 -

recognized that Plaintiff's obesity caused some limitations but explained why it did not lead to a classification of disability. To support this decision, the ALJ notes Plaintiff's improving condition, summarizing that

> [t]reatment records noted [Plaintiff's] extremities were normal on physical exam with no evidence of edema and no gross sensory or motor deficits. On another exam there was evidence of edema trace bilateral non-pitting, but there was no gross sensory or motor deficits. Treatment records indicated [Plaintiff] ambulated without difficulty. However, [Plaintiff] was noted to have abnormal involuntary movement of the hand extensors bilaterally with intention movement on June 16, 2016. A few months after the date last insured, medical records noted [Plaintiff] had 5/5 muscle strength despite abnormal hand movement. There was no evidence of muscle wasting or deformities. Thus, there is no evidence that [Plaintiff's] physical impairments singly or in combination were disabling from the alleged onset date through the date insured.

(Id. (internal citations omitted).) Even so, the ALJ's decision accounted for the fact that

> [Plaintiff's] ability to perform basic physical work activities was more than minimally limited prior to the date last insured. Therefore, the [ALJ] will reduce [Plaintiff's] residual functional capacity to include exertional and postural limitations in consideration of the portions of their testimony during the hearing that are reasonably consistent with the objective medical evidence and treatment found in the record.

(Id.)

Plaintiff has not identified any functional limitation attributable to obesity that the ALJ failed to consider. The ALJ already indicated that she acknowledged and weighed the evidence of Plaintiff's subjective complaints and symptoms due to her

- 16 -

obesity. She subsequently classified Plaintiff's RFC to perform light work but recognized that her ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. (ECF No. 8-2 at PageID 39.) As mentioned in the previous section, since Plaintiff has no past relevant work, the ALJ considered her age, education, work experience, and RFC to determine whether there were jobs available in significant numbers in the national economy that Plaintiff could perform. (Id.) The ALJ asked for supporting testimony from a VE. The VE testified that given all the limiting factors, Plaintiff would be able to perform the requirements of occupations such as "mail sorter" with 58,000 jobs nationally, "photocopying machine clerk" with 20,000 jobs nationally, and "office clerk" with 206,000 jobs nationally. (Id.) Using this information, the ALJ concluded that Plaintiff is not disabled.

Plaintiff's burden requires her to specify symptoms the ALJ failed to consider that her obesity exacerbates, but she has not sufficiently done so. Her allegations of symptoms are neither entirely consistent with medical evidence nor with other evidence in the record, nor has she proposed additional limitations that were missing from the ALJ's findings. As such, because Plaintiff has failed to meet this burden and because the ALJ explicitly considered how Plaintiff's obesity impacted her other impairments

- 17 -

and reduced her RFC accordingly, the ALJ's determination was supported by substantial evidence.

### III. CONCLUSION

For the reasons described above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

July 16, 2026
Date

Check obesit